## Farmers State Bank of Stonington, Appellee, v. R. Rasmussen and Eaton State Bank, Appellants.

### Gen. No. 8,305.

Opinion filed April 17, 1929.

Leslie J. Taylor and C. E. Fleisher, for appellants.

Provine & Williams, for appellee.

Mr. Justice Eldredge delivered the opinion of the court.

The Farmers State Bank of Stonington brought its action of replevin against R. Rasmussen and the Eaton State Bank of Owaneco, Illinois. The case was originally instituted in the circuit court of Macon county by filing an affidavit therein January 13, 1927, executed by Mike M. Hines, cashier of the said Farmers State Bank, in which he deposes that said bank is the owner of and lawfully entitled to the possession of the following goods and chattels:

"One-half interest in about ninety-five (95) acres of corn in field and crib; one (1) Ford touring car, license number 783591, motor number 6527581; one (1) Chauncelor gasoline engine; one (1) Deering binder; one (1) Mower; three (3) discs; one (1) gang plow; one (1) garden plow; two (2) single row cultivators; one (1) two-row cultivator; one (1) clod crusher; one (1) Fordson tractor; one (1) walking plow; one (1) hand corn sheller; five (5) cows; one (1) bull; seven (7) yearling calves; one (1) corn dump; one (1) hoisting machine; one (1) young calf; one (1) brown mare; one (1) brown horse; one (1) gray mare; one (1) brown mare; two (2) farm wagons; two (2) sets double work harness; all located on the southwest quarter (SW¼) of Section sixteen (16), Township fourteen (14) north, range one (1), east of the Third Principal Meridian, in Macon county, Illinois."

It is further averred that R. Rasmussen and the Eaton State Bank wrongfully took and now detain said goods and chattels. On the same day a writ of replevin was issued by the circuit clerk of Macon county and delivered to the sheriff of that county to serve. The sheriff of Macon county served the writ by taking possession of the chattel property mentioned on January 14, 1927, as shown by his return thereon. No further steps were taken thereafter in the case in the circuit court of Macon county. On January 18, 1927, the Farmers State Bank, the Eaton State Bank and R. Rasmussen entered into the following stipulation:

"WHEREAS, the Plaintiff in the above entitled cause, has caused a writ of replevin to issue out of the Circuit Court of Macon County, Illinois, directed to the sheriff of that county, to replevin certain articles of personal property, as set forth in the return of the sheriff upon said writ of Replevin: and

"WHEREAS, the Eaton State Bank, a corporation, claims to be the owner of all of said property, the

said defendant R. Rasmussen, having only an equitable interest in said personal property: and

"WHEREAS, the said Eaton State Bank had advertised a sale of all of said property, together with other property located on the Eaton Farm in Macon County, Illinois, described as 'The Southwest Quarter ($\frac{1}{4}$) of Section Sixteen (16), Township Fourteen (14) North, Range One (1) East of the Third Principal Meridian,' to be held on Wednesday, January 19th, 1927, and the parties in interest are desirous of saving all costs and expenses possible without waiving any of the rights of the parties thereto; and

"WHEREAS, it is deemed for the best interest of all concerned that said sale proceed as advertised, and that all parties purchasing at said sale receive unquestioned title to said articles of personal property.

"WHEREFORE, In consideration of the mutual benefits to accrue to the parties, it is stipulated and agreed that the above entitled cause be transferred to the Circuit Court of Christian County, Illinois, at the March Term thereof, the parties defendant waiving service of process, and entering their appearance; and that the party plaintiff, by reason of this stipulation, shall not be deemed to have waived any rights which it has, or claims to have, by reason of the release of said property, for said sale, and may set up such facts in its Declaration, Replication, or subsequent pleading as it could or might, if said cause of action should have proceeded without any sale having been had pursuant to this Agreement.

The parties defendant shall not be taken to have waived any rights, which they, or either of them, jointly or severally, may have had, or claimed to have had, to said property, but may set up in pleas and rejoinders or other pleadings, any defense which they might offer to said cause, as fully, and with like effect as though said cause had proceeded without a sale of the personal property.

"IT IS FURTHER STIPULATED AND AGREED, that said sale shall proceed without interference, and with an assurance that the purchaser shall receive good title to said personal property; that the clerk of said sale shall keep in duplicate, a correct and true account of all the articles of merchandise sold at said sale, including all the personal property described in the return of the sheriff of Macon County, Illinois, to the Writ of Replevin. And the proceeds arising from such sale of said personal property described in said return shall be held by Charles Law, as custodian, until the final determination of said case, and paid over pursuant to the final judgment in said cause, to the parties entitled thereto by the final judgment in the case.

"IT IS FURTHER STIPULATED AND AGREED that the parties defendant shall have the remaining approximately fifteen acres of corn in the field shucked, and the one-half part thereof shelled, delivered and sold by the said Charles Law; and, after deducting the expense of shucking, selling and delivering, place the net proceeds from the sale of said corn with the funds arising from the sale of the chattel property at said sale, on the 19th day of January, 1927.

"IT IS FURTHER STIPULATED AND AGREED that the sale has been advertised by the Eaton State Bank, and that said sale is to be held under the name of the said Eaton State Bank, as owner. But, such sale, under the name of such owner, shall be without prejudice to any of the rights of either of the parties to said cause, and the proceeds from said sale and from said corn are subject to the rights of all the parties hereto, as finally determined by the court.

"IT IS FURTHER STIPULATED AND AGREED that either of the parties hereto shall have the right to appeal from the judgment of the Circuit Court, and that the words "Final Judgment," as used herein, means the judgment which becomes final by reason of no further prosecution of appeal, or by Certiorari, to the Supreme

Court, and that neither party to this cause waives any rights by reason of entering into this stipulation. The purpose of the stipulation being to save and protect the rights of all parties, pending a final adjudication of the matters in controversy, and to save costs and expenses which would follow an interference or stoppage of the sale, as advertised.

"IT IS FURTHER STIPULATED AND AGREED, that if notes are taken at said sale, the said notes, and the proceeds arising therefrom, shall be held by the said Charles Law, the same as cash proceeds. The said Charles Law being authorized to enforce the collection of any notes taken in lieu of cash.

"IN WITNESS WHEREOF, this stipulation has been executed in triplicate by the parties hereto, by their respective attorneys, this 18th day of January, 1927."

It appears that pursuant to this stipulation that the original affidavit filed in the circuit court of Macon county, together with the writ of replevin issued by virtue thereof to the sheriff of that county, with his return thereon, were taken from the files in the case in Macon county and refiled with the clerk of the circuit court of Christian county on February 7, 1927. The record does not show that the case was dismissed in Macon county nor that any leave was granted by that court to take the original files in that case and refile them in the circuit court of Christian county. The stipulation itself was never filed in Christian county, although it was introduced in evidence as an exhibit. The record does not show that there was any order entered either in the circuit court of Macon county or in the circuit court of Christian county divesting the sheriff of Macon county of his possession of the chattels mentioned which he obtained by virtue of the said writ of replevin.

On March 21, 1927, the Farmers State Bank filed its declaration in the circuit court of Christian county.

On September 14, 1927, the defendants Eaton State Bank and R. Rasmussen, filed numerous pleas thereto and on September 28, 1927, an additional plea. By agreement of the parties the jury was waived and the cause submitted to the court for trial, who, after hearing the evidence, entered the following judgment or decree:

"The Court finds that the plaintiff was the owner of, and entitled to the possession of the property mentioned and described in the replevin writ herein, at the time of the institution of this suit. The Court further finds that since the bringing of this proceeding, the parties to the suit entered into a stipulation by which it was agreed that the property should be sold, and the fund brought into Court, which was done, and is now being held by Chas. Law. In view of the stipulation and the facts as disclosed in this case, the plaintiff, Farmers State Bank of Stonington, is entitled to have and recover out of said funds, the sum due on its note offered in evidence, of $625.00, together with costs; and the balance and residue of said fund, so received from the sale of said property, is directed to be paid by the Trustee Law, to the Eaton State Bank, with its costs, and judgment is entered accordingly, and as above described.

"Therefore, it is considered by the Court, that the plaintiff do have and recover out of said funds so received from sale of said property, and held by trustee, Charles Law, its said damages of $625.00, together with its costs, and that the Eaton State Bank of Owaneco, Illinois, have and recover of and from said trustee, Charles Law, the balance and residue of said fund, to all of which the defendants and each of them except."

It appears from the evidence that R. Rasmussen, appellant, was a brother of one Chris Rasmussen, who was a tenant farmer living in Macon county and who

originally owned most of the chattel property involved in this case. R. Rasmussen lived in Christian county and was also a tenant farmer. On November 30, 1925, Chris Rasmussen, as principal, and Lelah Rasmussen and R. Rasmussen as sureties, executed a note payable to the order of the Farmers State Bank of Stonington for the principal sum of $1,300. On May 2, 1926, Chris Rasmussen executed another note without any sureties thereon payable to the order of the same bank for the principal sum of $652 and to secure this latter note executed a chattel mortgage conveying the property in question, which was then located upon his farm in Macon county. The mortgage, however, was acknowledged before a justice of the peace of Christian county and afforded no protection as against other creditors of Chris Rasmussen, who might obtain judgment liens. On July 29, 1926, the firm of Bradley & Bauer recovered a judgment against Chris Rasmussen and his wife in the sum of $764.33, and on August 10, 1926, the same firm recovered another judgment against Chris Rasmussen only for $299.05; both of these judgments were rendered in Macon county.

In the fall of 1926 Chris Rasmussen left his farm and family and departed from the State. In November, 1926, after R. Rasmussen had learned that his brother Chris had gone away he went to the Farmers State Bank to make arrangements to pay the $1,300 note on which he was surety. He made several of these trips and had several interviews with Mike Hines, the cashier of the bank, in regard to paying this note. Some time during these interviews with Mike Hines he was told by the latter that Bradley & Bauer had recovered a judgment against his brother Chris. The substance of these conversations we will comment on later, but as a result thereof R. Rasmussen proceeded to purchase the Bradley & Bauer judgment, which, by reason of costs and interest, seems to have grown to

the sum of $906.70. Bradley & Bauer refused to assign this judgment unless he paid the other judgment. This was the first time that R. Rasmussen had any knowledge that there were two judgments. He did not have quite enough money to pay both judgments and telephoned to Mike Hines, requesting his advice in regard to the matter. Hines told him to draw his check on the Farmers State Bank for the amount necessary to pay the second judgment and the bank would honor it and take his note for the amount when he returned. The accrued interest on the second judgment made the amount due thereon $322.87. Thus R. Rasmussen paid out of his own money $1,229.57 for the purchase of these judgments against his brother and which were prior liens to the chattel mortgage held by the Farmers State Bank as above noted. At the request and advice of said Hines the assignments of these judgments were made to the Farmers State Bank. Prior to the purchase of these judgments it had been agreed by both Hines and R. Rasmussen that the chattel property enumerated in the chattel mortgage was of a fair valuation of $2,400, and it is conceded by the parties to this suit that such was its fair valuation. Hines had an execution issued on one of these judgments and levied upon the property mentioned. It was sold by the sheriff and bid in at the direction of Hines by the attorney for the Farmers State Bank for the sum of $1,227. There does not appear to have been any other bidders at the sale. When the levy was made by the sheriff by virtue of the Bradley & Bauer judgment, property to the value of $400 was set off as exempt. The evidence does not show clearly whether any property other than that included in the chattel mortgage was levied upon and sold by the sheriff. R. Rasmussen purchased from the wife of Chris Rasmussen part of the exempt property to the value of $200 and paid her for it. Immediately after the sale

R. Rasmussen took possession of the chattel property in question, went to the Eaton State Bank and borrowed therefrom $3,121, to secure which he executed a chattel mortgage on all this property and some other property which was located on his own farm. Out of this money he started to pay the $1,300 note and found that on November 12, 1926, Hines had caused judgment to be entered upon that note which, including attorney's fees, amounted to the sum of $1,528.67. He also found that an execution had been issued upon the judgment and placed in the hands of the sheriff. This made further costs and he was compelled to pay the sheriff in satisfaction of the judgment $1,551.36. He also paid the amount of money he had borrowed from the Farmers State Bank to purchase the second Bradley & Bauer judgment. On November 12, 1926, the Farmers State Bank caused a notice to be served upon the sheriff of Macon county notifying him that by virtue of a chattel mortgage it had levied on and taken possession of all the property included therein now held by him under the execution against Chris Rasmussen in favor of Bradley & Bauer, said possession being subject to the execution, and property unnecessary to sell in order to meet the execution properly claimed as exemption, all funds arising from the sale of the same over the amount of the debt, interest and costs represented by said execution, etc. The Eaton State Bank foreclosed the chattel mortgage by taking possession of the property mentioned therein and advertised the same for sale. Thereupon the Farmers State Bank brought its action of replevin in the circuit court of Macon county, which was transferred to the circuit court of Christian county pursuant to the stipulation heretofore mentioned. The sale under the Eaton State Bank chattel mortgage was held in accordance with the stipulation and the money realized therefrom is held by Charles Law, as custodian or trustee, who now has in his hands the sum of $1,299.03.

As a result of all these transactions it is apparent that if the judgment of the trial court is allowed to stand, R. Rasmussen has been mulcted to the amount of $1,229.57, for which the Farmers State Bank has received the benefit. The contention of the latter is that it has the legal title to all the chattel property by virtue of bidding it in at the sheriff's sale under the execution for the Bradley & Bauer judgment; that it is also entitled to the amount of the note for $652 secured by its chattel mortgage and is also entitled to the amount of the second Bradley & Bauer judgment; to the property or the value thereof which was set aside as exempt and purchased by R. Rasmussen and that the latter is entitled to no credit whatever for the amount he paid to procure the assignment of the Bradley & Bauer judgment. This claim is made upon the basis that R. Rasmussen agreed to purchase these judgments and assign them to the bank and if the property sold for more than sufficient to pay all the debts of Chris Rasmussen to the bank, the bank would allow him the surplus or excess to apply upon the $1,300 note. During all these transactions prior to the institution of the replevin suit R. Rasmussen had no attorney to advise him as to his legal rights or the effect of any agreement he might make and it is apparent that he depended solely upon Mike Hines as cashier of the Farmers Bank. There could be no possible reason for his voluntarily paying $1,229.57 for the benefit of the bank when he only owed the bank in the first instance $1,300, and a small sum of accrued interest thereon. Rasmussen testified in substance, as follows: "After my brother went west, I learned of his financial matters that affected the property. I learned that he had a mortgage on all his implements, his stock and things. I then went to the Farmers State Bank at Stonington to see about that note that I was surety for. Saw Mr. Hines about the $1300.00 note. I asked him, I suppose I would have to pay the note, they had levied

on his goods at home, and he says, 'No, don't worry, I have got a mortgage that will protect you and myself, that is the reason I took the mortgage, you go on home and needn't be uneasy.' I then went home and came over to Taylorville the next day and found he had brought judgment against me on that note. The next trip to the bank I talked to Mr. Hooper. Mr. Hines was not in. I went back again and talked to Mr. Hines, he said the only thing I could do now was to buy the assignment there in Decatur, and he advised me to go up there and take that over. I went up to Decatur and took over those two judgments against Chris Rasmussen. While I was in Decatur, I had a conversation with Mr. Hines because I didn't have enough money to take over the judgment, and Mr. Hines told the Attorney for me to take it over and write the balance on the bill, the amount was $322.00, the attorney turned the phone to me and Mr. Hines told me the same thing. I took over the judgments and brought them to sign over to the State Bank at Stonington. Mr. Hines told me, 'you have that signed over to us.' He says that the bank will protect you from the other creditors coming in and coming on to you. I didn't learn that a judgment had been taken against me, together with my brother, not until later at Colegrove's Bank. I didn't know there was a large number of creditors at that time. I made three or four trips to Stonington. I think I had three different conversations with Hines about this matter. I went to Decatur for the purpose of buying one judgment, and found after I got there, there was another. I knew that these judgments and executions issued on them were ahead of the mortgage. I attended the sheriff's sale at the Eaton farm. My two sons were there also. I saw Reese at the sale. Reese asked how much I paid for those judgments I took over at Decatur, I told him something over $1200.00, but didn't remember exactly the full amount.

He said, well when they go to sell this as a whole, I will bid it in and the stock is yours. He bid it in at that price that I had given him. After the sale, I saw Mr. Reese and Mr. Hines, my two sons were with me. Reese was out at his car and Mr. Hines and the rest of us were up on the porch. When we were on the porch together with Mr. Hines, he looked at me and said, 'Mr. Rasmussen, the stock is yours, and your boys are here and you can do as you please with it,' and he turned around and said, 'Mr. Reese, is that so,' and Mr. Reese says, 'I didn't get that, how was it.' so he repeated the same question and he said 'Yes.' Joe was standing by my side at that time. Mr. Hines said nothing about acting as Custodian. Mr. Hines told me to go back home and come to the bank and I will give you an agreement that the stock is yours. I told him we would. Mr. Reese went right on and Mr. Hines did the same thing shortly after. After the Sheriff's sale, my two sons went to the Eaton State Bank, and I first learned of the $625.00 note owed by Chris Rasmussen to the Farmers State Bank. My agreement was that there would be a sale of the goods under the execution that was already issued and he (Hines) was going to take title through the Sheriff's sale. I stopped at the Stonington Bank on the way home from the sale, talked with Hines on this occasion. We come in there and he says to me, he was going to give me a written agreement that the stock was mine, said I will have Mr. Hogan make it out so there will be no mistake, and I will either send them to you or give them to you. He had already given me possession of the stuff. Mr. Hines was going to voluntarily give me a paper that the stuff belonged to me.''

Mike Hines testified, in substance: ''I bought the property at the sheriff's sale. Paid $1229.00. I did not pay it with anything at the sale, not in cash. Bought it in as the assignee of two judgment creditors.

In the sense of the word it was all Mr. Rasmussen's
money and he paid interest on it. The amount of the
debt, interest and costs of the two judgments which
R. Rasmussen bought with his money was bid there at
that sale. I had a talk with R. Rasmussen about buy-
ing in the property at the sale. I told him I would buy
it in, in the name of the bank. I don't recall that I told
him that it would protect him. I had a conversation
with Mr. Rasmussen a week, possibly two weeks before
this judgment was assigned to us. I think on three or
four different occasions he was in the bank and we
talked about this matter each time I was in there. I
said I would take over this judgment, all that was left
after paying our indebtedness, the indebtedness to the
bank would be turned over to him to apply upon his
claim. Rasmussen said he would do that. I told Mr.
Rasmussen to go to Decatur and pay this judgment
off. We only had knowledge of one judgment at the
time. After he arrived at Decatur, he found there
was another judgment, and he had the attorney call
me and explain about this other judgment. I told Mr.
Rasmussen to stop at the bank on his way home. He
stopped in and I told him I didn't have the figures of
all the costs included in this, and that just as soon as
I got the amount from my attorney of the complete
costs in the case, I would let him know, if they would
come in and get it or I would mail it to them.'' What-
ever the conversations were between Rasmussen and
Mike Hines in regard to just what should be done, it
is unquestionably true that R. Rasmussen believed
from those conversations that although the property
sold at the sale would be bid in by the bank yet this
was for his benefit and that he, after the sale, would
have title to the property and all his actions thereafter
were in accordance with this understanding. He went
to the Eaton State Bank, borrowed a large sum of
money on the strength that he had title to the prop-

erty and gave the chattel mortgage thereon to secure it. But whatever the real understanding might have been the judgment in this case cannot be sustained. If the stipulation conferred any jurisdiction upon the circuit court of Christian county (which question has not been raised and which is unnecessary to be determined at this time), it could only confer jurisdiction upon the parties to the stipulation. The custodian of the funds was not a party to the stipulation nor is he an officer of the court nor one over whom the court has any jurisdiction whatever. The court has no authority to enter any judgment requiring him to pay these moneys over to either party for the reason it has no power to enforce such judgment.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*